In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-3797

MICHELLE JOHNSON,

*Plaintiff-Appellant*,

*v.*

JO ANNE B. BARNHART, Commissioner
    of Social Security,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-73—**J. P. Stadtmueller**, *Judge*.

———————

ARGUED APRIL 7, 2006—DECIDED JUNE 5, 2006

———————

Before FLAUM, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, who was 38 years old at the time of her hearing and has a high-school education, complains about being denied social security disability benefits. She is afflicted with a mysterious malady called sarcoidosis (see Terrence C. Demos & Patrick J. Fahey, "The Image of Sarcoidosis," http://www.meddean.luc.edu/ Lumen/meded/Radio/sarc/sarc.htm, visited Apr. 9, 2006), an inflammatory condition that often affects multiple organs, principally the lungs, eyes, and skin. She testified

that she has shortness of breath, blurred vision, painful skin lesions, and pain in her joints. Although the disease is incurable, its symptoms can be alleviated by steroids. Johnson takes prednisone and it has proved to be an effective medication for her skin lesions, though as a side effect it has contributed to a substantial weight gain that has brought her up to 211 pounds although she is only 5 feet 5½ inches in height. The administrative law judge found that, considering Johnson's age, education, and the gravity of her symptoms, she can do sedentary work and therefore is not disabled, and the district court affirmed.

Sarcoidosis is one of those diseases that varies greatly in severity from individual to individual; indeed, many people with sarcoidosis have no symptoms at all. If one believed everything the plaintiff said at her hearing, she is indeed incapable of full-time gainful employment, but the administrative law judge was not obliged to believe all her testimony. Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case.

The judge's opinion is long and painstaking, and though it is also jargon-ridden and in places opaque, we can make out what she was driving at. But our job would be much easier if only the administrative law judges would define the obscure medical terms with which they pepper their opinions, relate those terms to the claimant's functioning—which is all that matters since "the social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment," *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005)—and indicate the relevance of *absence* of symptoms. *Boiles v. Barnhart*, 395 F.3d 421, 425-26 (7th Cir. 2005).

The medical evidence reveals that Johnson's sarcoidosis has less impact on her ability to work than one would infer just from her testimony. She has 20-20 vision, and although she has been diagnosed with an inflammation of the eyes that causes her vision to be intermittently blurry, there is nothing to indicate that it prevents her from reading, and it has responded well to prednisone. Her skin lesions have also responded to medication, and they are unsightly and irritating rather than disabling except insofar as they cause pain (a matter we'll take up shortly). Although Johnson complains of shortness of breath, the physician who diagnosed her sarcoidosis reported that "her lungs were clear." And after she started taking prednisone and methotrexate regularly, her treating physician "noted that claimant's sarcoidosis was stable with no further reports of shortness of breath," which undermined Johnson's testimony that "I try to do a little exercise, walk down the street, but it's like, hard for me to breathe. I have trouble breathing."

Joint and muscle pain is another symptom of sarcoidosis. Johnson testified that her legs hurt "all over from my knees down to my ankles," and they hurt "every day, all day . . . . It's hard for me to get up in the morning because my leg's so bad. It would be swollen up so bad so I'll get up, maybe try to take a bath but my roommate have to help me in and out the tub." She takes naproxen, an anti-inflammatory drug, for the pain. But medical examinations have revealed no serious problems with her joints or difficulty in walking and moving her limbs, which might have indicated that the sarcoidosis had affected her joints. Her treating physician seems to have thought that her pain was mainly the result of the skin lesions.

The administrative law judge thought Johnson's complaints about pain exceeded the objective medical evidence,

yet pain can be severe to the point of being disabling even though it has no diagnosable cause and thus is entirely in the patient's mind. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006); *Carradine v. Barnhart*, 360 F.3d 751, 753-54 (7th Cir. 2004); *Foote v. Chater*, 67 F.3d 1553, 1560-61 (11th Cir. 1995) (per curiam); *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989). "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, *or psychological* abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged," 20 C.F.R. § 404.1529(b) (emphasis added), but the word we have italicized underscores the difficulty of confirming or refuting pain testimony.

Even when as in this case the claimant attributes her pain to a physical rather than a psychological cause, the administrative law judge cannot disbelieve her testimony solely because it seems in excess of the "objective" medical testimony. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). The etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be "read off" from a medical report. "[P]ain is a complex, multidimensional, subjective experience. The report of pain is related to numerous variables, such as cultural background, past experience, the meaning of the situation, personality variables, attention, arousal level, emotions, and reinforcement contingencies." Dennis C. Turk & Ronald Melzack, "The Measurement of Pain and the Assessment of People Experiencing Pain," in *Handbook of Pain Assessment* 3, 5 (Turk & Melzack, eds., 2d ed. 2001). "[T]here is often a poor relationship between the 'subjective' experience of pain and

'objective' or external referents. This may be most evident in the case of chronic pain where apparently similar peripheral pathology, injury, or nociceptive input [pain stimulus] can result in markedly different presentations. Whereas patient self-report, using verbal analogue or other rating scales, is perhaps the most straightforward and appropriate means of determining pain severity (or other aspects of the pain experience), this is prone to response bias like all self-reports." Keith Nicholson, Michael F. Martelli, & Nathan D. Zasler, "Myths and Misconceptions about Chronic Pain: The Problem of Mind-Body Dualism," in *Pain Management: A Practical Guide for Clinicians* 465, 465-66 (Richard S. Weiner, ed., 6th ed. 2001); see also Kathleen McGrory, "Doctors Struggle to Treat Mysterious and Unbearable Pain," *New York Times*, May 31, 2006, p. D5.

Despite the inherent difficulty of evaluating testimony about pain, an administrative law judge will often have solid grounds for disbelieving a claimant who testifies that she has continuous, agonizing pain. The judge in *Schmidt v. Barnhart*, *supra*, 395 F.3d at 747, found that the claimant's "daily living activities were not significantly restricted, that he was not receiving any active treatment or therapy for his conditions at the time of the hearing, that he was not using any prescription medication, and that his alleged pain did not prevent him from engaging in substantial gainful activity for several months after he allegedly became disabled." Johnson's skin lesions are painful—and how painful cannot be determined from the medical evidence. But we know that they have responded to medication, that some of her testimony was exaggerated (the testimony about her difficulty in breathing), and that she continued working as a car washer for four years after being diagnosed with sarcoidosis. These circumstances justified the administrative law judge in finding Johnson's testimony about pain exaggerated.

Johnson complains that the judge failed to explore the possible effect of her obesity on her sarcoidosis. In *Mendez v. Barnhart*, 439 F.3d 360, 363 (7th Cir. 2006), we said that "the administrative law judge should have considered whether [the claimant's] difficulty in getting around would interact with her cognitive limitations and her psychiatric condition to make her incapable of complying with even simple workplace directives." See also *Gentle v. Barnhart*, *supra*, 430 F.3d at 868. There is no evidence that Johnson's obesity would have a *direct* effect on her ability to do sedentary work, as it might on work that involved a lot of moving around; but obesity as a source of a specific limitation must be distinguished from obesity as a factor that aggravates a limitation having another cause. Mendez's obesity didn't aggravate her cognitive limitations; it created a separate impediment to her being able to work full time. Johnson's obesity did not create a separate impediment to her being able to work but may have aggravated the problems with her joints because obesity places additional stress on joints. 1 William J. Koopman & Larry W. Moreland, *Arthritis and Allied Conditions: A Textbook of Rheumatology* 27-28 (15th ed. 2005). "The heavier you are, the more stress is placed on your spine, hips, knees and ankles. Also, heavier people tend to resist exercise, resulting in another risk factor—weak muscles, particularly in the thigh. Weakness in the thigh, in turn, places extra stress on the knees." Jane E. Brody, "Personal Health: Arthritis: Your 'Reward' for Wear and Tear," *New York Times*, July 30, 2002, p. F7. But there is no indication that in assessing Johnson's joint problems the administrative law judge gave insufficient weight to the effect on them of Johnson's obesity, which is anyway not extreme. Her Body Mass Index of 34.6 ($211 \text{ lbs.} \times 703/(65.5 \text{ inches})^2$) places her in obesity class 1, the lowest class. National Institutes of Health, *The Practical*

*Guide: Identification, Evaluation, and Treatment of Overweight and Obesity in Adults*, NIH Pub. No. 00-4084 (Oct. 2000), p. 1, tab. 1, http://www.nhlbi.nih.gov/guidelines/obesity/prctgd_b.pdf.

Actually, Johnson's lawyer is less concerned with possible flaws in the administrative law judge's opinion than with the brevity of the hearing and the judge's failure to obtain all of Johnson's medical records. Johnson was not represented and her current lawyer points us to cases which hold that the administrative law judge has a duty in such a case to ask questions that will elicit a full picture of the applicant's capacity for full-time gainful employment. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997); *Binion v. Shalala*, 13 F.3d 243, 245-46 (7th Cir. 1994); *Reefer v. Barnhart*, 326 F.3d 376, 380-81 (3d Cir. 2003). The judge did ask a number of questions, and really what Johnson's lawyer seems to want is that the judge have asked questions that would have cued Johnson to exaggerate her condition. For example, he complains that the administrative law judge "did not ask about the severity of the blurriness [of Johnson's vision], nor what, if any, restrictions it caused." Prompting Johnson to elaborate her testimony would simply have widened the gulf between it and the medical records.

As for the missing records (belatedly introduced in the district court), the administrative law judge asked Johnson at the hearing whether there were any additional documents that should be considered, and Johnson said no. The judge had requested all of Johnson's medical records from Johnson's physician and it was not the judge's fault that the physician failed to comply and that Johnson failed to alert the judge to the problem. Even a pro se litigant bears some responsibility for making a record. In any event, the missing

medical records, though indicating some worsening of Johnson's skin lesions, would have been unlikely to change the administrative law judge's conclusion that Johnson was not disabled from doing sedentary work.

AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*