NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 18, 2008
Decided January 26, 2009

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-2150

| | |
|---|---|
| DEBI VILLANO, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | Hammond Division. |
|     *v.* | |
| | No. 2:07cv187 |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security, | William C. Lee, |
|     *Defendant-Appellee*. | *Judge.* |

**ORDER**

Debi Villano applied for disability insurance benefits and supplemental security income benefits, claiming that she was disabled primarily because she had arthritis in her knees and was obese. The Social Security Administration denied her claims at all stages of review, and the district court upheld the decision of the administrative law judge ("ALJ"). On appeal, Villano argues that the ALJ erred by failing to explain his finding that Villano was not entirely credible, by failing to discuss Villano's depression and the effect of her

obesity on her arthritis in computing her residual functioning capacity, and by determining that Villano acquired from a previous job the transferable skill of "judgment." Because we agree that the ALJ's decision contains several significant errors, we vacate the judgment and remand to the agency.

## I. Background

Villano is a high-school educated woman, born in 1957, who was previously employed as a stocker, a van driver, a convenience store clerk, and a bell ringer for the Salvation Army. The record shows evidence of several medical conditions: morbid obesity, arthritis, depression, high blood pressure, early chronic obstructive pulmonary disease, hypertension, diabetes mellitus, neuropathy, endema, and posttraumatic stress disorder.

Villano's doctors have consistently diagnosed her with morbid obesity and arthritis in her knees. She is approximately 5'7", and her weight has fluctuated between 291 and 344 pounds. She began experiencing degenerative changes in her right knee as early as 1999, and subsequent x-rays showed "degenerative arthritis." This condition has been confirmed repeatedly by Dr. James Serwatka, Ms. Villano's treating physician, as well as by two agency nontreating physicians and another physician who Villano saw at the agency's request. Between 2003 and 2006, Villano regularly saw doctors for knee pain, which was resolved or reduced by medication, including Naprosyn, Vioxx, and Ibuprofen. In 2004 the agency doctors opined that Villano could stand or walk for two hours and sit for six during an eight-hour workday. Dr. Serwatka's responses in a 2006 Residual Functioning Capacity ("RFC") Questionnaire were less hopeful: he opined that she could sit for only two hours and stand for two, though he apparently based his responses on the functional limitations that she had described to him. He estimated that Villano might miss work twice a month and thought that it would be difficult for her to hold a competitive physical job, though his ultimate prognosis was "fair/good."

Villano's psychiatric record appears to have worsened over time. In September 2003 a physician diagnosed her with mood swings and anxiety "without any significant depressive symptoms." When a psychiatrist saw Villano in July 2004 at the Administration's request, she diagnosed Villano with posttraumatic stress disorder and moderate-to-severe stressors and recommended counseling. Around the same time, an agency doctor filled out a Psychiatric Review Technique Form (which was apparently signed off by another agency doctor), diagnosing Villano with nonsevere posttraumatic stress disorder. He opined that her social functioning and ability to maintain concentration, persistence, or pace were mildly limited, but that her daily-living activities were not

functionally limited.  Dr. Serwatka diagnosed Villano with depression in December 2004, October 2005, and May 2006.  In the 2006 RFC Questionnaire, however, he opined that her symptoms were not severe enough to interfere with attention or concentration.

After the Social Security Administration denied her claims initially, an ALJ held a hearing in August 2006.  There, Villano testified that in a typical day, she walks her daughter's dogs, cleans her room, does laundry, washes the dishes, visits her grandchildren, and makes lunch, taking breaks to sit and rest between most activities.  When asked about her limitations, she estimated that she could sit continuously for a half hour to an hour, but added that she alternates between sitting and standing because excessive sitting causes pain and stiffness in her knees and hips.  She said that she has depression and that she cries for about two hours at a time three days a week, but she no longer sees a psychiatrist because she cannot afford it.

A vocational expert ("VE") also testified at the hearing.  She opined that Villano could not perform her previous jobs (as a van driver/chauffeur and a stocker).  She testified, however, that an individual with the restrictions that the ALJ assigned to Villano could be a production worker (992 jobs), an interviewer (132 jobs), or an information clerk (425 jobs).  She said that a person with all the limitations Villano claimed, though, would not be able to perform any job.  In her report the VE also stated that Villano had acquired the skill of "judgment" from her work as a van driver/chauffeur.

The ALJ performed the five-step analysis, finding that Villano had not worked since September 2003 (step one); she had severe impairments, including arthritis and obesity (step two); her impairments did not meet or equal a listed impairment (step three); she had the residual functioning capacity to sit for six hours and stand for two but could not work around unprotected heights, hazardous machinery, or pulmonary irritants, and was unable to perform her past work (step four); and she could perform other jobs existing in significant numbers and thus was not disabled (step five).  The Appeals Council declined review, and the district court upheld the ALJ's decision.

## I. Analysis

When the Appeals Council denies review, as here, the ALJ's decision constitutes the Commissioner's final decision.  *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).  We defer to the ALJ's factual determinations if they are supported by substantial evidence.  42 U.S.C. § 405(g); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).  The ALJ is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion. *Steele*

*v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *see Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Steele,* 290 F.3d at 940.

### A. Credibility

Villano first argues that the ALJ failed to analyze the factors that Social Security Ruling 96-7p required him to consider in determining credibility, failed to consider how her obesity supports her limited ability to sit, and improperly drew inferences based on a lack of objective medical evidence. The ALJ's cursory explanation was that Villano's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." He reasoned that she could sit for six hours a day because no medical evidence showed she could not.

In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons, *see Steele*, 290 F.3d at 941-42. Additionally, under S.S.R. 02-1p the ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). Failing to acknowledge this effect may impact the ALJ's credibility determination. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). Furthermore, the ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it. S.S.R. 96-7p; 20 C.F.R. § 404.1529(c)(2); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006); *Clifford v. Apfel*, 227 F.3d 863, 871-72 (7th Cir. 2000).

The ALJ failed to build a logical bridge between the evidence and his conclusion that Villano's testimony was not credible. First, the ALJ did not analyze the factors required under S.S.R. 96-7p: Although he briefly described Villano's testimony about her daily activities, he did not, for example, explain whether Villano's daily activities were consistent or inconsistent with the pain and limitations she claimed. Nor did the ALJ analyze what effect Villano's obesity had on her arthritis under S.S.R. 02-1p. Though a failure to consider the effect of obesity is subject to harmless-error analysis, *see Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), the Commissioner has not persuaded us that the error is harmless, given the other flaws with the RFC analysis and the analysis of Villano's ability to perform other jobs. The ALJ said he

disbelieved Villano's testimony about her inability to sit (albeit in the course of his RFC analysis) because no medical evidence supported such a limitation, but as we have noted, a lack of medical evidence alone is an insufficient reason to discredit testimony. *See* S.S.R. 96-7p; *Clifford*, 227 F.3d at 871-72. Also, the ALJ did not mention Villano's testimony about the frequent crying spells she said she suffered as a result of her depression, and he should have at least explained whether and why he found that testimony credible or not credible, given her diagnoses of depression and related psychological problems.

### B. *Residual Functioning Capacity*

Villano also argues that the ALJ violated Social Security Ruling 96-8p by failing to properly analyze her combination of impairments in computing her RFC. In his RFC discussion, the ALJ noted Villano's obesity and arthritis, and agreed that her ability to stand and walk was limited, discounting the agency doctors' opinion that she could perform light work. But he concluded that no medical evidence showed she could not sit for six hours and thus adopted the agency doctors' six-hour limit on sitting rather than the much shorter limit Villano proposed. Villano faults the ALJ for failing to discuss how her obesity affects her impairments as required by S.S.R. 02-1p, failing to find a limitation on sitting ability, and for failing to discuss her depression.

In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling. S.S.R. 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). The ALJ's cursory analysis does not give us confidence that he had appropriate reasons for rejecting the limitations Villano alleged. As noted above, the ALJ failed to analyze the combined effect of Villano's obesity and her other impairments, drew improper inferences about Villano's ability to sit based solely on a lack of objective medical evidence, and failed to discuss Villano's depression. The Commissioner argues that Villano's testimony supported the ALJ's conclusion that she could perform a full range of sedentary work because she did housework, shopped, drove short distances, walked her dogs, and played with her grandchildren. But limited daily activities such as Villano's do not contradict a claim of disabling pain, *see Zurawski*, 245 F.3d at 887; *Clifford*, 227 F.3d at 872, and Villano also testified that she frequently took breaks and switched between sitting and standing, which further supports her claim.

### C. *Transferable Skills*

Villano argues that the ALJ made errors in his determination at step five that she could perform a significant number of jobs. In making that determination, the ALJ relied on the VE's testimony that Villano had acquired from past work the transferable skill of "judgment" and found that although she could not perform the full range of sedentary work, she could perform the jobs that the VE identified and thus was not disabled. Villano contends that the ALJ erred in finding that she had acquired the transferable skill of "judgment" and by overstating the number of jobs available to her by a factor of ten.

In determining whether the claimant can perform jobs that exist in significant numbers at step five of the analysis, the ALJ must decide whether the claimant acquired any skills from her past work experience, and if so, whether they would transfer to new jobs. *See* S.S.R. 82-41; *Key v. Sullivan*, 925 F.2d 1056, 1062 (7th Cir. 1991). This circuit has not addressed whether "judgment" is a skill, but at least two other circuits have determined that it is not, explaining that a skill as defined in S.S.R. 82-41 and 20 C.F.R. § 404.1565(a) is a particular learned ability, and "judgment" is too vague to constitute such a skill. *See Draegert v. Barnhart*, 311 F.3d 468, 475-76 (2d Cir. 2002); *Ellington v. Sec'y of Health & Human Servs.*, 738 F.2d 159, 159-61 (6th Cir. 1984). Thus, the ALJ erred in concluding that Villano had a generalized skill of "judgment" that was somehow transferable to new jobs in a different field. The ALJ also mistakenly concluded that Villano could perform 15,400 jobs when the VE had identified only 1,549 jobs. In light of the other problems we have identified, we are not convinced that these errors are harmless.

Finally, Villano disagrees with the district court's conclusion that the ALJ's decision could be upheld under the Medical-Vocational Guidelines ("Grid") despite these errors. The court reasoned that transferability of skills was immaterial, citing a provision of the Grid that would direct a finding of "not disabled" if it applied to Villano. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.18 to 201.22. The Grid directs findings of "disabled" or "not disabled" based on common combinations of characteristics, but it does not account for nonexertional limitations, such as Villano's pain and her restriction from exposure to pulmonary irritants and hazardous machinery. *See* 20 C.F.R. § 404.1569a(c); *Haynes v. Barnhart*, 416 F.3d 621, 628-29 (7th Cir. 2005). When a claimant has nonexertional limitations that might significantly reduce the range of work she can perform, the ALJ may not rely on the Grid to find a claimant not disabled but must instead consult a VE to determine whether the claimant can perform a significant number of jobs. 20 C.F.R. § 404.1569a(d); *see Haynes*, 416 F.3d at 628-29; *Zurawski*, 245 F.3d at 889. Here, it appears that the ALJ followed the appropriate procedure, but as we have explained, he made legal and factual errors in reaching his conclusion.

Accordingly, we VACATE the judgment of the district court and REMAND the case to the agency for further consideration. On remand, the ALJ should give reasoned

assessments of Villano's credibility, RFC, transferable skills, and ability to perform a significant number of jobs.