**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 4, 2009
Decided August 18, 2009

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 08-4016

| | |
|---|---|
| ROBERT D. NICHOLSON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District |
| | of Illinois |
| *v.* | |
| | No. 07-CV-2150 |
| MICHAEL J. ASTRUE, Commissioner of | |
| Social Security, | Michael P. McCuskey, *Chief Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Robert Nicholson sought Social Security disability benefits, but an administrative law judge rejected his application, finding that he was able to perform light work. The Appeals Council and the district court upheld that determination. Nicholson argues that this was error, primarily because the ALJ had no reason to reject his testimony about his symptoms. He also argues that the ALJ failed to develop the record before drawing a conclusion about his residual

functional capacity. Finally, Nicholson argues that the ALJ's step-five determination is not supported by the evidence. None of these contentions has merit, and so we affirm.

**I**

In December 2003 Nicholson, then 48 years old, went to a hospital emergency room, complaining of back pain. The doctor there found that Nicholson was experiencing pain when sitting upright but that his back was otherwise normal. Four months later, in April 2004, Nicholson applied for disability-insurance benefits, claiming that he suffered from chronic back pain and had difficulty breathing. At the request of the Social Security Administration, Nicholson was examined in August 2004 by Dr. George Gindi, a state-agency family-practice physician. Dr. Gindi diagnosed Nicholson with lower-back pain; that pain arose after Nicholson had back surgery in 1983 and 1987. The doctor also concluded that Nicholson (a smoker) suffered from chronic obstructive pulmonary disease and hypertension. Based on Dr. Gindi's report, another state-agency physician, Dr. Stanley Burris, completed an assessment of his "residual functional capacity" ("RFC") and opined that Nicholson could lift 20 pounds occasionally and 10 pounds frequently, could stand or sit for 6 hours in an 8-hour workday, and could push or pull using hand or foot controls without limitation.

After the agency twice denied his application administratively, Nicholson requested a hearing before an ALJ. Two months before that hearing, Nicholson was examined by Dr. Bert Akerman, a general practitioner. Dr. Akerman took a more pessimistic view of Nicholson's capabilities: he thought that Nicholson could stand or sit for only one hour in an eight-hour workday and could never push or pull. Dr. Akerman diagnosed Nicholson with chronic pain, lumbar-disc disease, right-side sciatica, hypertension, and depression.

At his hearing in March 2007, where Nicholson was represented by counsel, he testified about his pain and physical limitations. He explained that he could walk or sit for only 15 minutes at a time before the pain in his legs and back became too severe. He testified that he completed the ninth grade, has poor reading and writing skills, and held previous jobs in manufacturing. Nicholson said that he spends his days watching TV and drives infrequently because he fears that his foot will give out. Nicholson related that he takes an antidepressant "as needed"; his last use, he said, was a couple of months before the hearing. Nicholson also said that he sees Dr. Akerman only when he has pain, and that Dr. Akerman had not referred him to any psychiatrist or psychologist to treat his depression.

Finally, a vocational expert ("VE") testified about the jobs available to Nicholson. The ALJ instructed the VE that Nicholson had the RFC to perform light work and could carry up to 10 pounds frequently and 20 pounds occasionally, and stand for up to 6 hours in an 8-hour

period. The VE opined that given those limitations Nicholson could work as a food-preparation or fast-food worker, a cafeteria attendant, a kitchen helper, and a janitor. When cross-examined by Nicholson's attorney about a hypothetical claimant who, because of chronic back pain, had to take frequent breaks exceeding the time allotted for lunch and for scheduled morning and afternoon breaks, the VE responded that this limitation would eliminate all of the jobs he listed.

Shortly after the hearing, the ALJ issued his decision denying Nicholson's claim. Following the five-step test for evaluating disability, 20 C.F.R. § 404.1520, the ALJ first found that Nicholson had not engaged in gainful employment since January 2001. Next, the ALJ determined that, although Nicholson's back disorder and depression were severe impairments, they did not, either alone or in combination, meet or equal a listed impairment. The ALJ then found that Nicholson retained the functional capacity to perform light work, had the ability to carry up to 10 pounds frequently and 20 pounds occasionally, and stand for up to 6 hours in an 8-hour period. The ALJ concluded that Nicholson could not engage in work involving climbing or unprotected heights, and the ALJ also limited him to tasks of one to two-step operations.

In making his RFC finding, the ALJ used a two-step process to evaluate Nicholson's reported symptoms. First, the ALJ found that there is an underlying medical impairment that could reasonably be expected to produce symptoms similar to those described by Nicholson. Second, using the factors listed in 20 C.F.R. § 404.1529(c), the ALJ evaluated whether the intensity and persistence of Nicholson's actual symptoms limit his ability to do basic work activities. The ALJ noted Nicholson's acknowledgment that he is not under the regular care of a physician and visits Dr. Akerman only when he experiences significant pain. The ALJ also took into account Dr. Akerman's assessment that Nicholson cannot stand or sit for more than one hour during a regular workday and that he has difficulty using his hands and feet. These findings, the ALJ noted, were not supported by any diagnostic testing. With respect to Nicholson's depression, the ALJ noted that there is no record of treatment for a mental impairment, and that Nicholson conceded that he is not receiving care for his depression. Thus the ALJ concluded, based on the objective medical evidence as well as Nicholson's own testimony, that Nicholson's account of his symptoms was not entirely credible.

Finally, relying on the VE's testimony as well as Nicholson's age, education, and employment history, the ALJ concluded that Nicholson is "not disabled" because there are many jobs in Illinois that he can perform. As examples, the ALJ cited 3,500 cafeteria jobs, 2,900 janitor jobs, and fast-food jobs of which over 3,000 were at the light level and 14,500 were at the sedentary level. The ALJ also concluded that the evidence did not support any limitations to the VE's testimony other than those provided in the ALJ's RFC findings.

## II

The Appeals Council denied Nicholson's request for review, making the ALJ's ruling the final decision of the Commissioner. See *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). This court will overturn an ALJ's denial of disability benefits only if the decision is not supported by substantial evidence or is based on an error of law. See 42 U.S.C. § 405(g); *Nelms,* 553 F.3d at 1097.

In this court Nicholson's principal argument is that the ALJ's credibility finding is erroneous. He contends that the decision to discredit his testimony of disabling symptoms was not adequately explained by the ALJ. According to Nicholson, the ALJ erred in concluding that the objective medical evidence does not support his account of his symptoms; the ALJ, says Nicholson, should not have rejected Dr. Akerman's assessment of his limitations or ignored parts of Dr. Gindi's report that support his testimony.

In assessing a claimant's credibility, an ALJ must consider several factors, including the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, treatment, and limitations. See 20 C.F.R. § 404.1529(c); S.S.R. 96-7p. The ALJ must then support his finding with specific reasons. See *Villano*, 556 F.3d at 562. This court reviews credibility determinations deferentially. See *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008); *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006).

In Nicholson's case, the ALJ's adverse credibility determination is supported by substantial evidence and adequately explained. The ALJ thought it significant that, when asked whether he sees a doctor regularly, Nicholson responded that he sees Dr. Akerman only when he has pain or when he needs a prescription refill. Nicholson also testified that he was not seeing a psychiatrist or psychologist for his depression. He did not hint that his infrequent treatment or failure to seek treatment was due to inability to pay for treatment. *Cf.* Craft, 539 F.3d at 679 (explaining that inability to afford treatment is one reason that can "provide insight into the individual's credibility"). Notably, besides an occasional visit to Dr. Akerman, there is no evidence that Nicholson sought any other treatment for his physical or mental impairments, which he claims have prevented him from working since December 2003. This lack of treatment supports the ALJ's adverse credibility finding. See *id*. Moreover, Nicholson's testimony that he is able to walk without the assistance of a walker and has no problems or side-effects from any of his medications also buttresses the ALJ's adverse credibility determination.

The ALJ was entitled to place little or no weight on Dr. Akerman's assessment that Nicholson could stand or sit for only one hour in an eight-hour workday and could never push or pull. The regulations require that the ALJ give opinions by treating physicians controlling weight, but only if the opinions are supported by medical findings and consistent with substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2); *Simila v. Astrue*, No. 07-3682, 2009 WL 2169207, at *8 (7th Cir. July 22, 2009). Although Nicholson testified that he has visited Dr. Akerman for medical treatment, the only record of an examination by Dr. Akerman is the assessment he performed in support of Nicholson's claim for disability. Even if Dr. Akerman can be considered a treating physician, the ALJ may nonetheless assess the weight that Dr. Akerman's opinion deserves by examining whether his opinion was internally consistent and consistent with the other objective medical evidence. See 20 C.F.R. § 404.1527(c)-(d); *Simila*, 2009 WL 2169207, at *8.

Here, the ALJ's decision to discount Dr. Akerman's assessment in favor of the state-agency doctors' opinions was based on substantial evidence. Dr. Akerman's assessment contains internal inconsistencies, a fact that even Nicholson acknowledges. For example, in assessing the use of Nicholson's hands, Dr. Akerman noted that Nicholson can never use his right or left hand for simple grasping or fine manipulation, but in another section of his report, Dr. Akerman indicated that Nicholson can continuously perform functions of reaching and handling. Dr. Akerman's assessment is also inconsistent with that of Dr. Gindi. After performing a thorough examination, in which he observed that Nicholson had some trouble getting off the examination table, Dr. Gindi concluded that Nicholson was a "[w]ell-developed, well-nourished . . . male in no acute distress" who looked "appropriate for his age" and was "able to move and ambulate without any assistance." Finally, although the form Dr. Akerman used had space for particular medical or clinical findings supporting his assessment, he identified no such findings. This suggests that his assessment was based solely on Nicholson's subjective complaints of pain and discomfort. See *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

The only other argument Nicholson raises that gives us some pause is his criticism of the ALJ's reliance on rather stale medical information to support his findings. The medical evidence in Nicholson's case is sparse: it consists of an emergency-room report from 2003, Dr. Gindi's 2004 report, assessments from other state-agency doctors who relied on Dr. Gindi's report, and Dr. Akerman's 2007 assessment. Once the ALJ rejected Dr. Akerman's opinion, he was left with information that was almost three years old. Nicholson argues that the ALJ had an independent duty to develop the medical record, despite the fact that Nicholson was represented by counsel throughout these proceedings. He notes that the Supreme Court held in *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), that Social Security proceedings are inquisitorial,

not adversarial. See also S.S.R. 96-7p (ALJ "must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements").

Although we acknowledge that the ALJ bears some responsibility for the development of the record, see *Nelms*, 553 F.3d at 1098; *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000), at the same time the ALJ is entitled to assume that a claimant represented by counsel "is making his strongest case for benefits," *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). An omission from the record is significant only if it is prejudicial to the claimant. See *Nelms*, 553 F.3d at 1098. Nicholson has been represented by counsel since October 2004. In twice denying Nicholson's application for disability benefits, the agency explained that the medical evidence showed that Nicholson retained the ability to do light work. In the more than two years that elapsed between the agency's last denial and Nicholson's hearing before the ALJ, the only additional evidence that Nicholson submitted was Dr. Akerman's assessment, which the ALJ was entitled to disregard for the reasons we have explained. Even now, Nicholson has not spelled out what additional evidence the ALJ might have gathered that would have been favorable to a finding of disability.

Nicholson concedes that ALJ must have the power to draw the line and decide that the record is complete, but he urges us to find that this ALJ gave up too soon. But the ALJ had a record on which he could rely, even though part of that record revealed that Nicholson was not seeking medical treatment for his conditions. The degree of the ALJ's responsibility to take the initiative is influenced, if not entirely dictated, by the presence or absence of counsel for the claimant. Nothing the ALJ might have requested was going to change the fact that Nicholson admitted that he saw Dr. Akerman only when he was in pain, nor the fact that Nicholson's visits to the doctor had been few and far between. We do not doubt that an additional medical opinion at the time of the hearing would have been helpful (one way or the other), but the question before us is whether the ALJ's decision to rest on the record that he had was an abuse of discretion. We think not.

Finally, Nicholson argues that the ALJ failed to explore perceived inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), see S.S.R. 00-4p; *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008); *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006), and that the ALJ should have included the limitations from the hypotheticals posed by Nicholson's counsel at his hearing. Nicholson points out that the jobs of janitor and cafeteria worker require a medium level of exertion whereas the ALJ's RFC limits him to light work.

An ALJ has an affirmative responsibility to inquire about possible conflicts between the VE's testimony and the DOT and to obtain a reasonable explanation for any apparent conflict. This ALJ did exactly that, by asking the VE specifically to point out any inconsistencies between the VE's testimony and the DOT. The VE did not mention any such inconsistencies, and Nicholson's counsel never identified any. The ALJ did all that S.S.R. 00-4p required. See *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

Any error by the ALJ in failing to obtain an explanation from the VE regarding the level of exertion required by the janitor and cafeteria jobs was harmless because Nicholson does not dispute that 14,500 sedentary fast-food jobs remain available, and these jobs fit Nicholson's RFC. See *Ketelboeter*, 550 F.3d at 626; *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007). And because the ALJ's adverse credibility determination was based on substantial evidence, the ALJ did not need to include the additional limitations (assuming a claimant who needed frequent breaks and could carry ten pounds only occasionally) proposed by Nicholson's counsel. See *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).

For these reasons, we **AFFIRM** the judgment of the district court, which in turn upholds the Commissioner's decision to deny benefits.