NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 24, 2012
Decided July 20, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3528

| | |
|---|---|
| GLENDA FAYE HALL, on behalf of TONY WAYNE HALL, deceased, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. |
| *v.* | No. 3:10-cv-143-RLY-WGH |
| MICHAEL J. ASTRUE, Commissioner of Social Security, *Defendant-Appellee.* | Richard L. Young, *Chief Judge.* |

**O R D E R**

Tony Hall lost his job as a truck driver and applied for disability insurance benefits. While his application was pending, he was killed in a motor-vehicle accident. His mother, Glenda Hall, was substituted as a party. An administrative law judge found that some of Hall's impairments were severe but not disabling and denied his claim. The district court upheld that determination. On appeal Mrs. Hall argues that the ALJ should have given more weight to a consultative exam as well as testimony of family members corroborating her son's disability. Because the ALJ explained why she gave less weight to this evidence and substantial evidence supports the ALJ's findings, we affirm.

Hall applied for disability insurance benefits in May 2008, claiming that he weighed 370 pounds and suffered from morbid obesity, diabetes, and deep vein thrombosis. Hall had worked as a truck driver until April 24, 2008.

Dr. Deandrea Perkins completed a consultative examination of Hall in the fall of 2008 in connection with his application for benefits. Dr. Perkins noted that Hall weighed 360 pounds and had a history of hypertension, diabetes, and deep vein thrombosis. She stated that Hall could "barely stand and walk across the room," that his abilities to lift, carry, or handle objects were impaired, and that he was at "high risk for sudden death." But Dr. Perkins also noted that Hall's ability to sit, and his gait, station, and motor function were all within normal limits, that he did not need "assistive devices for ambulation," and that his "gross manipulation and grip strength were intact."

A state-agency doctor reviewed Hall's medical records. The doctor gave "great weight" to Dr. Perkins' examination and concluded that Hall could occasionally lift 20 pounds, could frequently lift 10 pounds, and could stand or walk for up to 2 hours and sit for up to 6 hours in an 8-hour workday. The Social Security Administration denied Hall benefits administratively. Even if he could no longer perform his prior work as a truck driver, his conditions were not considered severe enough to keep him from working some other, less demanding jobs. Hall requested reconsideration of the denial. A second state-agency doctor reviewed Hall's medical records and concluded that Dr. Perkins' opinion should be given little weight because it was inconsistent with the medical evidence. Hall's application for benefits was denied on reconsideration.

While his request for reconsideration was pending, Hall tragically died in a motor-vehicle crash when his moped was hit by a truck. His mother was substituted as a party and requested a hearing before an ALJ so she could pursue his claims on behalf of his family.

An ALJ held a hearing in 2009 at which Hall's children, Mrs. Hall, and a vocational expert testified. Mrs. Hall explained that Hall had lost his commercial driver's license and his truck driver job because his diabetes prevented him from driving. He could hardly walk, she continued, and could not stand for more than five or ten minutes at a time. His daughter recalled that he was forced to quit his truck driver job because sitting for long periods caused him pain and swelling in his legs. His son asserted that Hall could not stand for more than two to three minutes. A vocational expert then testified and, responding to a hypothetical question posed by the ALJ, opined that a person of Hall's age, education, work experience, and residual functional capacity could perform unskilled, sedentary production, inspection, or office work, and that a significant number of jobs meeting this description existed in the national economy.

The ALJ denied benefits. Applying the required five-step analysis, see 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ determined that Hall had not worked since April 24, 2008 (step one); he had the following severe impairments: morbid obesity, insulin dependent diabetes mellitus, diabetic peripheral neuropathy, history of pulmonary embolism, history of deep vein thrombosis, hypertension, and obstructive sleep apnea (step two); and these impairments did not meet or equal a listed impairment (step three). The ALJ determined that Hall had a residual functional capacity to perform sedentary work and could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk at least 2 hours and sit 6 hours in an 8-hour workday, climb ladders and stairs, and occasionally stoop, kneel, crouch, and crawl (step four). Finally, based on the testimony of the vocational expert, the ALJ concluded that there were a significant number of jobs that Hall could still perform before his death (step five). The district court upheld the ALJ's decision.

On appeal Mrs. Hall first argues that the ALJ erred by giving little weight to the opinion of Dr. Perkins, whose consultative examination, in her view, established that Hall's residual functional capacity was so limited that it precluded all work.

The ALJ did not err in giving less weight to Dr. Perkins' opinion. An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight, 20 C.F.R. § 404.1527(c)(3), (4); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Here, the ALJ properly explained her reasons for giving less weight to Dr. Perkins' opinion that Hall was impaired in his ability to stand, move about, lift, carry, and handle objects: Dr. Perkins did not explain the extent of Hall's impairments, and her opinion conflicted with other medical evidence, including her own examination notes stating that Hall had no reflex abnormalities and that his gait, station, gross manipulation, grip strength, and ability to sit were all within normal limits. The ALJ concluded that these findings did not support a determination that Hall was disabled and explained that she gave greater weight to the opinions of the two state-agency doctors – who reviewed Hall's medical records and concluded that he could still perform sedentary work – because those opinions were more consistent with the objective medical evidence.

Mrs. Hall next argues that the ALJ erred by rejecting, without specific reasons, her testimony and that of Hall's children about his impairments. This testimony, she asserts, was consistent with the medical evidence and established that Hall was disabled. The ALJ did not err in discounting the testimony of Hall's family members.

Although an ALJ must provide specific reasons for credibility findings, *see Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009), her credibility determinations are entitled to "special deference" and will not be overturned unless "patently wrong," *Jones v. Astrue*, 623 F.3d 1155,

1160 (7th Cir. 2010). Here the ALJ considered the testimony of each family member and did not err by deciding to give little weight to testimony that Hall could not work. The ALJ noted the objective evidence in the record – including the examination by Dr. Perkins showing that Hall's gait, station, and ability to sit were within normal limits and the state-agency evaluations concluding that he could still perform sedentary work – that contradicted his family's assertions that Hall was disabled. In light of this evidence, it was not patently wrong for the ALJ to discredit testimony that Hall's impairments were too severe for him to work at all.

Accordingly, we AFFIRM the judgment.