In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-4295

SUSAN M. EICHSTADT,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 2535—**Robert W. Gettleman**, *Judge*.

———————

ARGUED SEPTEMBER 19, 2007—DECIDED JULY 17, 2008

———————

Before BAUER, MANION, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. Susan Eichstadt has fibromyalgia, a chronic condition that causes pain all over one's body, as well as fatigue and tenderness. Fibromyalgia is difficult to diagnose, for the symptoms vary depending on both the person and the time and circumstances of any given day. Eichstadt's disorder was diagnosed in 1999. At that point, she had been out of the workforce for 13 years. Four years later, in 2003, she filed for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, claiming that her fibromyalgia, along

with a potpourri of other conditions, rendered her dis-
abled and unable to work.

Eichstadt quickly confronted a serious problem. At her
administrative hearing, the Administrative Law Judge
("ALJ") found (and neither party disputes) that because
Eichstadt has not been in the workforce since May 22,
1986, her "insured status" under the Act expired on
December 31, 1987. The ALJ then found that the record
did not support a finding that the onset of Eichstadt's
disability occurred before her "date last insured" (as
Social Security jargon has it) and thus she was ineligible
for benefits. See 42 U.S.C. § 416(i). Eichstadt challenged
that finding unsuccessfully before the district court, and
now she has turned to this court. We affirm.

**I**

The standard of review that governs decisions in
disability-benefit cases is deferential. Both the district
court and this court must evaluate only "whether the
final decision of the [Commissioner] is both supported
by substantial evidence and based on the proper legal
criteria." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345,
351 (7th Cir. 2005). Though we "conduct a critical review
of the evidence, considering both the evidence that sup-
ports, as well as the evidence that detracts from, the
Commissioner's decision," we will uphold a decision
so long as the evidence supports it and the ALJ explains
her analysis of that evidence with "enough detail and
clarity to permit meaningful appellate review." *Id*.

Eichstadt offers several reasons why we should reject
the decision of the ALJ, but she relies most heavily on the
assertion that the ALJ came to the wrong conclusion

because she failed to follow the requirements of Social Security Ruling ("SSR") 83-20. SSR 83-20 addresses situations in which an ALJ finds that a person is disabled as of the date she applied for disability insurance benefits, but it is still necessary to ascertain whether the disability arose prior to an even earlier date—normally, when the claimant was last insured. See *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004). Eichstadt argues that her case triggered SSR 83-20 and that, had the ALJ properly followed its framework, she would have been required to engage a medical expert to establish the date when Eichstadt was first disabled.

The fundamental problem with Eichstadt's claim is that she did not file for benefits until more than 15 years after her insured status expired. Though that, in itself, does not doom her application, the long lapse in time raises obvious evidentiary problems. Unsurprisingly, Eichstadt was able to obtain very little information from the period prior to the expiration of her insured status, producing only a couple of records from 1986 and 1987 that related to dental pain and jaw surgery. She offered nothing that foreshadowed the fibromyalgia that was to come.

The remainder of the record consists primarily of Eichstadt's own testimony regarding a host of problems that pre-dated the expiration of her insured status, as well as testimony from her current physicians and medical records detailing her condition and diagnoses during the period post-dating her date last insured. To the extent that she focused on problems that pre-dated her insured status, Eichstadt presented a litany of ailments dating back to her childhood, for which no medical records exist. The ALJ correctly concluded that these conditions were irrelevant to Eichstadt's claim for disability benefits, not

only because Eichstadt was able to engage in substantial gainful employment during and after experiencing these problems, but also because they were conditions (such as hypothyroidism, sun rashes, dry eyes, etc.) that do not substantially impair one's ability to work and therefore do not amount to a "disability" under the Act. As for the evidence post-dating Eichstadt's date last insured, the ALJ reasonably concluded that this, too, failed to support Eichstadt's claim. Although this evidence tended to suggest that Eichstadt is *currently* disabled, and perhaps was disabled during the late 1990s, it provided no support for the proposition that she was disabled at any time prior to December 31, 1987.

Eichstadt's only response to that conclusion is that the evidentiary record might have been different if the ALJ had followed SSR 83-20. She reads SSR 83-20 as requiring the use of a medical expert whenever onset date is at issue. The relevant text of the ruling is:

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. *At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred*. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20 (emphasis added). Eichstadt relies on the italicized language to argue that the ALJ was *required* to call a medical expert in her case. In our view, however, the ruling imposes no such command. For one thing, it describes something that the ALJ "should" do, rather

than something he or she "must" do or "shall" do, imply-ing that the ultimate decision is up to the ALJ. In addition, the ruling speaks of the need for a "legitimate medical basis" for the ALJ's judgment and the need for "additional" evidence about onset. A medical expert here, however, would not have been giving "additional" evidence; the expert would have been providing the only evidence in the record about Eichstadt's condition before December 31, 1987. The Commissioner reads SSR 83-20 as urging the ALJ to seek a medical examiner's opinion only after a finding of disability has been made. We give some defer-ence to the Commissioner's interpretations, and we find this one to be entirely reasonable. The ALJ in this case found that Eichstadt was not disabled at any point before December 31, 1987. With no finding of disability, there was no need to determine an onset date.

Even if Eichstadt's current condition rendered it appro-priate to determine an onset date, SSR 83-20 requires a "legitimate medical basis" for any decision regarding when an impairment became "disabling" under the Act. But Eichstadt did not produce any medical evidence suggesting the presence of a disabling impairment at any time prior to the expiration of her insured status. It is therefore difficult to see how any medical examiner could have provided an opinion, grounded in the requisite "legitimate medical basis," that her now-diagnosed fibromyalgia rendered her "disabled" as early at 1986 or 1987. In short, SSR 83-20 did not require the ALJ to seek the input of a medical advisor before resolving this case. There simply is not enough evidence to support even an inference of an onset date that is now more than two decades in the past.

**II**

Eichstadt also argues that the ALJ failed to consider all of the evidence, erred in her credibility findings, and posed improper questions to the vocational expert. She complains, first, that the ALJ committed reversible error by refusing to consider evidence that post-dated Eichstadt's date last insured. But it is evident from the ALJ's decision that she did not "fail to consider" this evidence, but instead she examined it as required and subsequently concluded that the evidence was irrelevant, because it did not address the correct time period. For example, the ALJ's decision expressly acknowledges a May 2005 report from Eichstadt's treating rheumatologist. The report indicates "that claimant's symptoms and limitations date back to 'on or prior to December 31, 1987.'" The ALJ "assign[ed] no weight to this opinion as this doctor did not even begin treating claimant until December 1999, a full 12 years after the claimant's date last insured." The ALJ continued with additional reasons why she was discounting this 2005 report, thereby demonstrating that she did not, as Eichstadt contends, "refuse to consider" it, but rather concluded that it failed to support Eichstadt's claim. What the record was missing was testimony from any physician providing anything more than conclusory support for the proposition that one might be able to infer from fibromyalgia in 1999 the patient's condition in 1987.

Next, Eichstadt takes issue with the ALJ's finding that Eichstadt's "allegations regarding her limitations are not totally credible." In disability insurance cases, an ALJ's credibility determinations are "afforded special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226

F.3d 809, 811 (7th Cir. 2000). This court will overturn an ALJ's credibility determinations only if they are "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

In this case, the ALJ's credibility finding was grounded in the lack of evidence available with respect to Eichstadt's condition during the critical period prior to her date last insured. The record supports this assessment; indeed, it is hard to imagine what else the ALJ could have done. The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time.

Eichstadt's final argument challenges the hypothetical questions that the ALJ posed to vocational expert ("VE") Leo Knutson at the administrative hearing. The ALJ used Knutson's testimony to aid her in evaluating Eichstadt's residual functional capacity during her window of eligibility for benefits. The VE testifies about the claimant's ability to perform certain types of jobs, despite her impairments, during her period of eligibility. According to Eichstadt, the ALJ's questions to Knutson constitute reversible error because they "had no basis in the evidence developed in the record." In assessing claims such as this one in the past, we have held that:

> The hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record. However, the question need not take into consideration every detail of the claimant's impairments especially if the record demonstrates that the VE reviewed all the evidence prior to the hearing.

*Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994) (citations omitted). Indeed, this court has declined to find error

where the VE "reviewed the medical reports before giving his assessment," finding that, in such cases, the testimony "constitute[s] substantial evidence . . . despite any omissions in the hypothetical." *Id.*

In this case, Knutson did review the full record before testifying, and he offered an accurate and fair characterization of Eichstadt's prior work experience. His role in the case thus provides no reason to reject the ALJ's determination that Eichstadt was able to perform, at the very least, "sedentary" work during the period of her eligibility. Substantial evidence supports the ALJ's finding that, even if Eichstadt had been able to show that she qualified as "disabled" under the Act at any point before her insured status expired, she nonetheless retained the ability to perform substantial gainful activity during that time and was thus ineligible for disability insurance benefits.

* * *

The judgment of the district court in favor of the Commissioner is AFFIRMED.