In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2270

DENISE PARKER,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-C-0003—**Rudolph T. Randa**, *Judge*.

No. 09-2722

NARY KHENG,

*Plaintiff-Appellant*,

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 3786—**Susan E. Cox**, *Magistrate Judge*.

ARGUED JANUARY 26, 2010—DECIDED MARCH 12, 2010

Before BAUER, POSNER, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*.   We have consolidated for decision the appeals in these two social security disability cases, argued to this panel on the same day, because the opinions of the administrative law judges present similar problems that require reversal. Although judicial review of the decisions of administrative agencies is deferential, it is not abject, *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002); *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008); of particular relevance to these appeals, we cannot uphold an administrative decision that fails to mention highly pertinent evidence, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (per curiam), or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007).

Denise Parker, aged 48, suffers from chronic pelvic pain, incontinence, and asthma. Over the past decade she has consulted more than a dozen medical professionals and has undergone a series of operations designed to relieve her pain, including a hysterectomy and a separate operation to remove her ovaries. The operations discovered uterine fibroids, vaginal adhesions, and cysts. All were removed but the pain persisted. She takes Percocet, a narcotic painkiller, and Advil, both daily, yet still the pain persists. The professionals who have examined her were unanimous that she has severe, nearly constant, debilitating physical pain, and two of them advised that she can barely walk. Nevertheless

the administrative law judge found that the claimant can stand and sit for six hours during a workday, and on that basis decided that she would be capable of working as a counter attendant, assembler, sorter, or packager.

The administrative law judge's opinion states that "after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." This is a piece of boilerplate that appears in virtually identical language in both these cases as well as in a third social security disability case argued to us the same day. It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is "not *entirely* credible" yields no clue to what weight the trier of fact gave the testimony.

Immediately following this boilerplate the opinion states that "there is little objective evidence to support the claimant's allegations of extreme pain." By "objective evidence" it is apparent from what follows that the administrative law judge meant verifiable medical evidence, such as an x-ray or blood test or other medical procedure that would establish the etiology (cause) of a patient's symptoms with something approaching certainty. The opinion describes the procedures that the plaintiff had undergone and concludes that "the medical record shows that her doctors do not know

what is causing her reported extreme pain" and that "the claimant's pain is well out of proportion to any objective findings."

As countless cases explain, the etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to determine what is causing her pain that she is faking it. E.g., *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (per curiam); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (per curiam); *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The administrative law judge followed up the passage we just quoted by saying "one would expect that the claimant's hysterectomy or oophorectomy [the surgical removal of the ovaries, or one of them] would have given her some relief but those procedures did not . . . . The claimant's alleged pain remains." The fact that a medical procedure fails is weak evidence that the patient is a malingerer; and since the judge said merely that she didn't find the plaintiff's testimony "entirely" credible, we can't tell whether she thought her a malingerer.

The judge was troubled by the fact that the plaintiff admitted "that she never followed up with a pain clinic after only one visit." But the judge made no effort to elicit an explanation. There are many possible explanations; one is that after visiting the clinic, the plaintiff didn't think it would cure her pain. Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription;

it had been suggested to the plaintiff by an occupational therapist.

The judge brushed aside the doctors' statements that the plaintiff had disabling pain on the ground that the statements "seem[ed] to be based solely on the claimant's subjective complaints." That is correct, but the only thing that cast doubt on her complaints were reports by two nonexamining physicians that the administrative law judge did not see fit even to mention. The Social Security Administration's lawyer relied heavily on those reports in her brief and at argument in urging us to uphold the denial of disability benefits. But in doing so she violated the *Chenery* doctrine (see *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)), which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced. E.g., *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (per curiam); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).

We do not suggest that the absence of verifiable medical evidence of pain is an inadmissible consideration in a disability proceeding. In some cases, pain *does* have an objectively verifiable source, and if so the administrative law judge may certainly treat this as evidence that the claimant is disabled. And if the presence of objective indicators thus makes a claim more plausible, their absence makes it less so. It would be a mistake to say "there is no objective medical confirmation of the claimant's pain; therefore the claimant is not in pain." But it would be entirely sensible to say "there is no objective

medical confirmation, and this reduces my estimate of the probability that the claim is true." The administrative law judge said the first, not the second.

She refused to give any weight to the plaintiff's asthma and incontinence. She said that neither condition was disabling, and that is correct. But she failed to consider their effect in exacerbating the problems created by chronic severe pain. Difficulty in breathing and abnormal frequency of urination requiring constant trips to the bathroom are likely to place great strain on a person who is in constant pain and cannot walk without the aid of a cane (and sometimes a walker). The judge's failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error. *Terry v. Astrue, supra*, 580 F.3d at 477; *Villano v. Astrue, supra*, 556 F.3d at 563; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (per curiam).

We turn to our second case. Nary Kheng is a Cambodian refugee who came to the United States in 1981 and claims to be totally disabled by a combination of diabetes, hepatitis B, depression, and post-traumatic stress disorder (PTSD), though only the two mental ailments provide a possible basis for her claim. She had survived five years under the Pol Pot regime, but her parents and two of her siblings had been killed by the Khmer Rouge and she (13 or 14 at the time) had been tortured. The details of her personal history are not contested.

She and her husband own two video stores and she managed one of them until 2001 or 2002, when the store she managed had to be closed because her nightmares

prevented her from sleeping at night and invaded her mind during the day, preventing her from working. In December 2002 she complained to the doctor who was treating her for diabetes and hepatitis that she was nervous, had poor concentration, and was forgetful; the doctor thought these were symptoms of anxiety. The doctor's notes from her next visit, which was the following month, indicated that she feared traveling by herself but had not experienced recent memory lapses.

It was not until April 2004 (when the plaintiff was 42) that the doctor, on the basis of the plaintiff's complaints of often feeling overwhelmed and fearful, afraid of falling and of being alone, and suffering from constant fatigue, added to the plaintiff's "client problem list" depression and PTSD. In August the plaintiff was reported by a medical-benefits interviewer to have very poor memory and difficulty answering questions, to have had to take drugs to get through the interview, to have broken out in uncontrollable sweats, and to have lost her ability to concentrate.

Her further visits to her doctor were uneventful until October 2004, when she told him that her brother had committed suicide two days earlier. She was distraught, but it wasn't until the beginning of the following year that she again reported memory lapses, together with talking in her sleep, night sweats, sleeplessness, and flashbacks that made it difficult for her to distinguish between what was real and what was a memory, and bouts of crying and screaming. And for the last two years she also had been scratching herself compulsively with a

coin. A psychiatrist diagnosed her with PTSD and pre-scribed Lexapro, an anti-depressant drug. She felt better but continued to report anxiety, nightmares, depression, and fatigue. (The therapist testified that a better drug for the plaintiff would have been Zoloft, but that the plaintiff refused to take it because her brother had been taking it when he committed suicide.) The plaintiff's testimony at the hearing before the administrative law judge added a few details, such as that she takes her eight-year-old daughter with her when she goes grocery shopping in case she has a memory lapse.

Her symptoms are consistent with PTSD. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* (*DSM-IV-TR*) 463-68 (4th ed. 2000); Mayo Clinic Staff, *Post-Traumatic Stress Disorder (PTSD): Symptoms*, www.mayoclinic.com/health/post-traumatic-stress-disorder/ds00246/dsection=symptoms (visited Feb. 2, 2010). And PTSD is a psychiatric illness that can, though it does not always, render a person incapable of working full time. 20 C.F.R., Part 404, Subpart P, App. 1, Rule 12.06. But even if by 2005 she was totally disabled, she had to prove that she was totally disabled by March 2004, because after that date (the "date last in-sured," as it is called) she was no longer eligible for social security disability benefits; she had not been working for several years and as a result had exhausted her earned "quarters of coverage." 42 U.S.C. § 423(c); 20 C.F.R. § 404.140.

It is far from clear that her mental problems, stemming from depression and post-traumatic stress disorder,

though apparently they had begun in 1983, had by March 2004 progressed far enough to render her totally unable to work. Her case thus is not a strong one, but it is not so weak that we can deem it frivolous and ignore the grave deficiencies in the administrative law judge's opinion on grounds of harmless error, which is applicable to judicial review of administrative decisions and is thus an exception to the *Chenery* doctrine. *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 484 n. 2 (7th Cir. 2007); *Mengistu v. Ashcroft*, 355 F.3d 1044, 1047 (7th Cir. 2004); *Illinois v. ICC*, 722 F.2d 1341, 1348-49 (7th Cir. 1983); *Ngarurih v. Ashcroft*, 371 F.3d 182, 191 n. 8 (4th Cir. 2004).

The judge begins his discussion of the plaintiff's claim by stating that as of the date last insured she was suffering from depression and post-traumatic stress disorder. He then inserts the same (with some immaterial variation) boilerplate paragraph as in the *Parker* case: that "after considering the evidence of record, I find that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, in light of the objective medical evidence which does not fully support the claimant's subjective complaints." He follows with this bombshell: "the claimant's psychiatric impairments and treatment *all* surfaced after" the last date on which she was insured (emphasis added)—thus contradicting his earlier statement that she had depression and PTSD on that date. He makes no attempt to explain the contradic-

tion, but notes that her symptoms had worsened, and her only psychiatric medication, Lexapro, had been prescribed, after the insured date. Yet he lists her earlier "complaints of allergies, fatigue, depression, complaints of feeling overwhelmed, and tearful often," plus "sadness and nightmares and, for two years, had been scratching herself with a coin" and despite the boilerplate paragraph he indicates no disbelief in the truthfulness of her complaints. But he makes no attempt to evaluate their gravity and their impact on her ability to work full time, and instead repeats that "the claimant's psychiatric problems and treatment all surfaced after the" last date on which she was insured.

And that's it, so far as any analysis is concerned. (Again violating the *Chenery* doctrine, as in Parker's case, the brief for the Social Security Administration points to evidence, not mentioned by the administrative law judge, by a psychiatrist who thought that the plaintiff's condition was not disabling.) It is not enough. The administrative law judge should have determined whether the plaintiff's ailments are at present totally disabling, and, if so (see *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam)), he should have retained a medical expert to estimate how grave her condition was in March 2004. Social Security Ruling 83-20 (1983); *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999); *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997); see also *Eichstadt v. Astrue*, 534 F.3d 663, 666-67 (7th Cir. 2008); *Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006).

The decisions by the district courts upholding the denial of benefits to Parker and Kheng are reversed and

the cases returned to the Social Security Administration for proceedings consistent with this opinion.