NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued November 8, 2011
Decided February 14, 2012

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1855

| | |
|---|---|
| RON GURANOVICH, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 09 C 3167 |
| MICHAEL J. ASTRUE, | |
| Commissioner of Social Security, | Sidney I. Schenkier, |
| *Defendant-Appellee*. | *Magistrate Judge*. |

**ORDER**

Ron Guranovich applied for social security disability benefits in 2005, alleging that his post-traumatic stress disorder (PTSD) had left him unable to work since 1995. But the administrative law judge concluded that even with limitations from his PTSD, Guranovich possessed the residual functional capacity (RFC) to work at a significant number of jobs in the national economy as of December 31, 2000, his date last insured, and so found him not disabled. We affirm.

When Guranovich came home from Vietnam, the war came home with him. Guranovich suffers from PTSD, which sometimes causes him to believe he is back in the Vietnam War under threat of attack. Triggers of his PTSD include loud noises, blinking lights, rainstorms, haircuts, and various smells, including perfumes, cleaning solvents, and damp clothing. He thrashes in his sleep, and his wife, Linda Guranovich, no longer sleeps in the same bed with him, owing to an incident in which she awoke to find her husband asleep with his hands around her throat. During heavy rains, she reports that her husband sits in their garage with a gun, insisting that "they're out there behind the rain."

When these symptoms began, however, is uncertain. The Guranoviches allege that the symptoms began in the early 1990s and became disabling in 1995. But because Guranovich did not seek any treatment until 2003, no contemporaneous medical evidence supports his alleged onset date. The first medical record consists of cursory doctors' notes from 1969, immediately after Guranovich returned from Vietnam. They describe Guranovich as easily upset and suffering from head and hand tremors, rapid heartbeat, an upset stomach, and an inability to gain weight. But other than chiropractic records unrelated to his PTSD, this is Guranovich's last medical record for more than thirty years.

Guranovich finally sought help for his PTSD in 2003, when he began regular treatment at a local veterans center with readjustment counseling therapist Ignacio Ramos. Ramos later opined in a letter to the ALJ that Guranovich was "unemployable" due to his PTSD. Guranovich also visited a neurologist, who opined that Guranovich suffered from PTSD, likely anxiety disorder, and glaucoma. A year after he began counseling, Guranovich began regular treatment with psychologist Dr. Ronald Ballenger, who opined that Guranovich's PTSD symptoms "probably were extant subsequent to [Vietnam] service but have worsened with age."

In 2005, the ALJ held what would be the first of two hearings at which he reviewed Guranovich's medical records and his testimony about his subjective symptoms, as well as testimony from a medical expert and a vocational expert. Critically, the ALJ did not ask the medical expert any questions about Guranovich's PTSD; only about his physical symptoms (his scoliosis and tremors).

The ALJ issued a written decision denying Guranovich's claim, applying the five-step sequential evaluation, *see* 20 C.F.R. § 404.1520(a). The ALJ found that Guranovich was not engaged in substantial gainful activity after his alleged onset date (step one); that he had severe impairments, including PTSD (step two); that these impairments did not equal a listing impairment as of the onset date (step three); and that Guranovich was not disabled because he retained the RFC to continue his prior work until the date last insured (step four).

Guranovich sought judicial review, and the magistrate judge, presiding with the party's consent, reversed and remanded. On remand, the ALJ conducted a second hearing, at which additional testimony was presented by Guranovich, Guranovich's wife, medical expert Dr. Ellen Rozenfeld, and vocational expert Tom Dunleavy. Dr. Rozenfeld testified that Guranovich currently met disability listing 12.06 for PTSD—which meant it was per se disabling under Social Security rules—but could not specify an onset date because of the lack of medical evidence before 2003. Dr. Rozenfeld also opined that a finding of disability as of 1995, although possible, would be "a stretch because you're talking about eight years [from alleged onset to first date of treatment] of no file evidence and no real sense of the chronicity of the problems." Consistent with the prior testimony of VE Gresick, Dunleavy testified in response to substantially identical hypotheticals from the ALJ that if Guranovich's mental impairments were in no way limiting, he could have continued his prior work at the steel mill; if, however, Guranovich were restricted to limited or no social interaction, he could not return to his prior work, but there were a significant number of regional jobs compatible with this alternative RFC.

After this second hearing, the ALJ again denied Guranovich's claim. Using the required five-step sequential analysis, the ALJ concluded that as of his date last insured: Guranovich was not engaged in substantial gainful activity (step one); he had "severe" impairments—including PTSD—with "more than a minimal limitation" on his ability to work (step two); and no impairment met a listing disorder on the date last insured (step three). At step four, the ALJ considered the testimony about Guranovich's mental impairments, and found Guranovich not credible, gave little or no weight to Ms. Guranovich's testimony and to Dr. Ballenger's opinion, and gave considerable weight to Dr. Rozenfeld's testimony. Based on those determinations, the ALJ found that Guranovich's RFC included limitations from physical impairments but not from his mental impairments, and that he could return to his prior work. However, the ALJ added that if he had imposed limits on Guranovich's capacity to interact socially with supervisors, coworkers, and the general public, then Guranovich would not be able to return to his past work. Proceeding to step five, the ALJ found that jobs existed in significant numbers in the national economy compatible with this alternative RFC, and so found him not disabled.

On appeal, the magistrate judge issued a detailed opinion upholding the ALJ's decision. The magistrate judge agreed with Guranovich that the ALJ's finding at step two—that Guranovich's mental limitations, including PTSD, were severe—was inconsistent with the ALJ's finding at step four—that there were no RFC limitations from his mental impairments. Yet the magistrate judge concluded that the error was in finding some limitations at step two, not finding no limitations at step four, so he concluded the error was harmless. And the magistrate judge rejected Guranovich's challenges to the ALJ's

credibility determinations, finding that the lack of contemporaneous medical evidence supported each determination.

In this court, Guranovich argues that the ALJ erred at step four by finding "no limitations" from Guranovich's PTSD—a finding inconsistent with the ALJ's earlier conclusion at step two that the PTSD imposed "more than a minimal limitation" on his ability to work. Guranovich urges that the ALJ was required to include limitations in the RFC from all the impairments found to be "severe." *See* 20 C.F.R. § 404.1521 (defining "not severe" as an impairment that does not significantly limit a claimant's work ability). Even if the limitations from his PTSD had been slight, Guranovich contends, the ALJ should have included them in the RFC. Since the ALJ found his limitations more than minimal at step two, Guranovich reasons that it was clear error for the ALJ to find there were "no limitations" at step four.

This circuit has not yet decided whether an ALJ's findings at step four must be consistent with those at step two, and we need not decide the issue here, because the ALJ did not end his analysis at step four. Instead, the ALJ went on to apply an alternative RFC, which included limitations on social interaction to accommodate for Guranovich's PTSD. Even under this alternative RFC, the ALJ found at step five that Guranovich could have worked in a significant number of jobs available in the national economy, and so found him not disabled. Because the ALJ's decision would be the same under this alternative RFC at step five, any error at step four was harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (reaffirming that harmless error applies to social security cases); *see also Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (ALJ erred in finding that applicant could do light work, but not in finding that applicant could do sedentary work); *Anderson v. Bowen*, 868 F.3d 921, 926 (7th Cir. 1989) (same); *Harper v. Astrue*, 428 F. App'x 823, 830 (10th Cir. 2011) (ALJ included mental limitations at step five, so their omission at step four was harmless).

Guranovich's other objections have less merit. He argues, for instance, that the ALJ should have determined the onset date of his disability according to SSR 83-20, which sets out a step-by-step analysis for determining the onset of a present disability. *See* SSR 83-20. But because the ALJ did not find that Guranovich was presently disabled, he did not need to follow SSR 83-20. *See Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010). Guranovich also challenges the ALJ's various credibility determinations. But the ALJ's credibility determinations as to Guranovich, his wife, and Dr. Ballenger were all appropriately grounded in the absence of corroborating medical evidence of Guranovich's PTSD before his date last insured. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). Contrary to Guranovich's assertions, the ALJ did not disregard either his wife's testimony or Dr. Ballenger's opinion, but accorded both less weight because they were not supported by

contemporaneous medical evidence. *See Parker*, 597 F.3d at 923; *Allord v. Barnhart*, 455 F.3d 818 at 821 (7th Cir. 2006).

As we noted in *Eichstadt*, "the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time." *Eichstadt*, 534 F.3d at 668. In this case, Guranovich's failure to seek help for his PTSD until three years after his date last insured—and eight years after the onset of symptoms—left the ALJ without sufficient medical evidence to find him disabled as of that date. Accordingly, we **AFFIRM**.