# United States Court of Appeals
## For the First Circuit

No. 15-1041

GLORIA GEAN FISCHER,

Plaintiff, Appellee,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Barron, Selya, and Lipez,
Circuit Judges.

Joshua M. Salzman, Attorney, Appellate Staff, Civil Division, United States Department of Justice, with whom Benjamin C. Mizer, Acting Assistant Attorney General, John P. Kacavas, United States Attorney, Beth S. Brinkmann, Deputy Assistant Attorney General, Alisa B. Klein, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice, David F. Black, General Counsel, Social Security Administration, Christopher A. Michaels, Acting Regional Chief Counsel, Region 1, Social Security Administration, Matthew J. Del Mastro, Assistant Regional Counsel, Social Security Administration, and Sean D. Santen, Assistant Regional Counsel, Social Security Administration, were on brief, for appellant.

Christine Woodman Casa, with whom Francis X. Quinn, Jr. and Boynton Waldron Doleac Woodman & Scott, PA were on brief, for appellee.

July 29, 2016

**LIPEZ**, **Circuit Judge**.  An administrative law judge (ALJ) denied Gloria Gean Fischer's claim for disability insurance benefits (DIB) under the Social Security Act.  The ALJ concluded that Fischer was not disabled prior to the date on which her insured status expired and thus not eligible to receive benefits.  On petition for judicial review, the district court found that the ALJ erred as a matter of law when he failed to consult a medical expert before reaching this conclusion.  The district court relied upon Social Security Ruling (SSR) 83-20, which instructs an ALJ to consult a medical expert when the ALJ must infer a claimant's date of disability onset on the basis of ambiguous medical evidence.  See SSR 83-20, 1983 WL 31249, at *3 (Jan. 1, 1983); May v. Soc. Sec. Admin. Comm'r, 125 F.3d 841 (1st Cir. 1997) (per curiam) (unpublished table decision), 1997 WL 616196, at *1.

Defendant-appellant Carolyn W. Colvin, Acting Commissioner of Social Security, challenges the district court's interpretation of SSR 83-20 and its application to the facts of this case.  We find it unnecessary to resolve the parties' dispute concerning the general applicability of SSR 83-20 to the disability inquiry in this case.  Even assuming that the ruling applies here, the medical evidence was not ambiguous and thus the ALJ did not need to draw inferences as to whether Fischer's onset date preceded the expiration of her insured status.  Hence, SSR 83-20 did not require the ALJ to consult a medical expert.  We therefore vacate

the judgment of the district court and remand for consideration of Fischer's remaining claims.

Although our conclusion does not require us to determine the scope of SSR 83-20, we take this opportunity to highlight the analytical disarray surrounding the rule. We identify our concerns below so that the Commissioner is aware of the need to clarify the ruling's purpose and resolve the inconsistencies in her approach to its applicability.

**I.**

## A. Background[1]

On February 28, 2012, Gloria Gean Fischer applied for disability insurance benefits, alleging a disability stemming from a fall from a ladder in the late 1990s. Fischer had previously worked as a hair stylist, a lingerie store owner, and operator of a gift basket company. She alleges a disability onset date of October 31, 1995. Fischer's date last insured (DLI) was March 31, 1998. For Fischer to be eligible for benefits, she had to demonstrate that her disability existed prior to her DLI. See Cruz Rivera v. Sec. of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986) (per curiam).

Fischer's first relevant medical records reflect that she visited the Exeter Hospital Pain Clinic in October 1996,

---

[1] The facts recounted here are not in dispute and are taken from the decisions of the ALJ and the district court.

- 4 -

complaining of increasingly severe left buttock and leg pain, resulting from a June 1996 fall.[2]  Fischer reported that the pain worsened with standing and that it woke her up at night.  An examination revealed that Fischer had a full range of motion of the lumbar spine, good flexion and extension of the lower extremities, and that she was able to toe walk and heel walk.  The examination also revealed that Fischer had tenderness between vertebrae in both the lumbar vertebrae and the thoracic vertebrae regions of her spine and "unusual paraspinal tenderness."  A magnetic resonance imaging (MRI) indicated a bulging disc in the lumbar vertebrae, and an admitting physician administered an epidural steroid injection, diagnosed Fischer with sciatica secondary to a lumbar strain, and prescribed Naproxen for six weeks.

In January 1998, Fischer underwent an MRI after complaining of neck pain radiating to her left shoulder.  The results of the MRI were normal.  Three months later, on March 31, 1998, Fischer's insured status expired.  In October 1998, x-rays were taken of Fischer's pelvis and left hip to rule out either a bone abnormality or inflammation; the imaging results were again normal.

---

[2] The record is not clear as to whether the June 1996 fall is the ladder fall from which Fischer alleges her troubles began.

The record contains no relevant medical reports for the next five and a half years. In March 2004, Fischer presented with sensitivity on her left side and hip joint pain. Multiple x-rays and an MRI did not reveal any hip or sacroiliac joint problems, but an MRI of her lumbar spine suggested degenerative disc changes though no disc herniation. In May 2004, Fischer was treated for constant pain in her left buttock and down into her leg, as well as numbness and tingling in her left arm. After a series of MRIs in 2004 and 2005, Fischer underwent an operation in December 2006 to implant a spinal cord stimulator. As of 2009, Fischer reported to her treating primary care physician that she held two jobs and was happy and active. However, in 2010 and 2011, Fischer again sought treatment for pain in her left buttock, leg, and foot, and for pain in her lower back, which was aggravated by sitting. From 2011 through 2013, Fischer reported improvements in her pain followed by recurrences, which ranged from dull aching to significant limitations on her ability to stand or walk for more than two hours.

B. Agency proceedings & determinations

In September 2012, a state agency physician reviewed Fischer's application for benefits and determined that there was not enough evidence to support the conclusion that Fischer was disabled between her alleged onset date of October 31, 1995 and her DLI of March 31, 1998. Fischer requested a hearing before an

ALJ, which took place on May 16, 2013. At the hearing, Fischer testified that she was working at her retail shop when she fell from a ladder in the late 1990s and this fall exacerbated injuries from a car accident that took place in the 1980s. She stated that after the fall, she had pain throughout her entire left side, including her back, arm, and leg, and she had to rely on her daughter and other employees to do most of the work at the shop. She testified that she then closed her shop in 2003 and later underwent the spinal cord stimulator implant procedure. Fischer testified that after the implantation, she tried to return to work part-time as a hair stylist, but she could not sustain the work because of the required grasping, standing, and bending. Her pain worsened, and she now spends the majority of her time lying down or in bed for relief. She also testified that she developed depression during this time.

Following the hearing, the ALJ issued an order denying Fischer's claim. The ALJ found that, "although there is some evidence that corroborates the claimant's testimony of a fall in 1996, the medical evidence of record is insufficient to support" Fischer's assertion that she had a severe impairment prior to her DLI.

The Appeals Council denied Fischer's appeal, and she sought judicial review in district court. See 42 U.S.C. § 405(g).

## C.  District court decision

The district court vacated the Commissioner's decision and remanded the case for further administrative proceedings because the ALJ failed to comply with SSR 83-20 and consult a medical advisor before concluding that Fischer was not disabled as of her DLI.  The court first concluded that SSR 83-20's application is not predicated on a finding of present disability.  In so holding, the court relied almost entirely on its previous decision in Wilson v. Colvin, 17 F. Supp. 3d 128 (D.N.H. 2014).

In Wilson, the court refused to adopt the Commissioner's contention that an ALJ must first find a claimant presently disabled in order for SSR 83-20, and its medical expert requirement, to apply.  Id. at 141–42.  In the court's view, such a reading "would permit, and possibly encourage, an ALJ to avoid the inconvenience of either calling a medical advisor or making a finding regarding present disability in a case in which the evidence of a claimant's disability onset date is ambiguous."  Id. at 142.  Hence, the court concluded that the Commissioner could not condition the application of SSR 83-20 on a finding of present disability.  Id.  In Fischer's case, the court then found that the record did not unambiguously establish that Fischer was not disabled as of her DLI, thus requiring the ALJ to consult a medical advisor under SSR 83-20.

In social security cases, we review the district court's decision de novo, and we review the Commissioner's ultimate determination for substantial evidence. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). We review questions of law presented by an ALJ's decision de novo. See id.

The stated purpose of Social Security Ruling 83-20 is to "describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act (the Act) and implementing regulations."[3] SSR 83-20, 1983 WL 31249, at *1. The ruling states:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.

Id.

When determining the onset date of disability, an ALJ considers factors that include "the individual's allegation, the

---

[3] Title XVI of the Social Security Act governs applications for Supplemental Security Income (SSI) and Title II governs applications for DIB, such as Fischer's. See SSR 83-20, 1983 WL 31249, at *1. An award of SSI benefits requires a finding of present disability but, unlike an award of DIB, does not require the claimant to be insured at the time of onset. See 42 U.S.C. §§ 1381a, 423(a)(1)(A); Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999).

work history, and the medical evidence." Id. The ruling recognizes that this determination may be especially difficult when "the alleged onset and the date last worked are far in the past and adequate medical records are not available." Id. at *2. In such cases, if the alleged disability involved a slowly progressing impairment, the ALJ may need "to infer the onset date" based on "medical and other evidence that describe the history and symptomatology of the disease process." Id. Where an inference must be made, it "must have a legitimate medical basis." Id. at *3. To this end, SSR 83-20 requires that "[a]t the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred." Id.

The Commissioner challenges the district court's interpretation of SSR 83-20's general application to Fischer's case as well as the court's specific application here of SSR 83-20's medical advisor directive. As a general matter, the Commissioner asserts that "onset" is conceptually distinct from the disability determination, and "[t]he Ruling," as a whole, "is not concerned with the threshold question of whether a disability exists," which the ALJ was tasked with deciding in Fischer's case. The Commissioner also argues that SSR 83-20's medical advisor directive applies only if "an impairment of nontraumatic origin is [first] found to be presently disabling." However, even if that directive could apply here, the Commissioner argues that the

- 10 -

district court erred in concluding that Fischer's medical evidence was ambiguous, requiring the ALJ to infer Fischer's onset date and call a medical advisor.

As we discuss in detail below, the Commissioner's arguments as to SSR 83-20's general applicability are confusing and inconsistent. However, we need not resolve this case on the basis of the ruling's general applicability, if, based on the facts before us, we conclude that Fischer's medical evidence is not ambiguous and therefore the ruling's medical advisor requirement would not apply here.

Where "[p]recise [e]vidence [is] [n]ot [a]vailable" and thus there is a "[n]eed for [i]nferences," SSR 83-20 instructs the ALJ to call a medical advisor. SSR 83-20, 1983 WL 31289, at *3. Therefore, the dispositive question before us is whether SSR 83-20's requirement to consult a medical advisor applies to the facts of this case. That is, did the ALJ need to make an inference based on a lack of "precise evidence" as to disability onset prior to DLI?

Arguably, every onset determination reached by an ALJ -- a lay individual with no required medical training -- will involve some degree of ambiguity and inference. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). However, there must be some line. In Grebenick v. Chater, the Eighth Circuit concluded that no ambiguity existed where the

claimant's multiple records from the two years subsequent to her DLI indicated that her "symptoms had not yet reached the disabling level of severity" prior to her DLI.  121 F.3d 1193, 1201 (8th Cir. 1997); see also Karlix v. Barnhart, 457 F.3d 742, 747 (8th Cir. 2006).

Similarly, Fischer's medical tests around the time of her DLI consist of an MRI and x-rays whose results were consistently normal.  A diagnostic report of Fischer's January 1998 cervical spine MRI, taken two months prior to her DLI, found "the cord to be normal," and stated that the imaging revealed "no extra-dural defects," "no disc herniation or degeneration," "[n]o destructive lesions of bone," "[n]o anterior or posterior subluxation," and that "the nerve root sleeves [were] exiting in a normal fashion from C3 to C7."  These results led Dr. Eric Geslien, who reviewed the MRI, to conclude that the imaging was a "[n]ormal MRI of the cervical spine."  The diagnostic report of x-rays of Fischer's pelvis and left hip, taken about seven months after her DLI, also was normal.  With regard to Fischer's pelvis, Dr. Michael Marrero saw "no fracture or dislocation" and "a normal appearance to the . . . joints."  Dr. Marrero studied two views of Fischer's left hip and again found "[n]o evidence of a fracture, dislocation or other intrinsic bony pathology."

The ALJ did not rely upon the absence of medical evidence but rather the existence of "precise" medical evidence -- the

normal results of the diagnostic imaging -- when concluding that Fischer's impairments had not reached disabling severity prior to her DLI. Compare Grebenick, 121 F.3d at 1201 (discussed supra), with Blea v. Barnhart, 466 F.3d 903, 912–13 (10th Cir. 2006) (concluding that the ALJ improperly made inferences based on a "gap in the [claimant's] medical record"). This precise medical evidence eliminated the need for the ALJ to infer that Fischer's onset date preceded her DLI.

We recognize that where contemporaneous medical evidence is lacking, post-DLI medical records may support a finding that the claimant's impairments were severe prior to her DLI, "[d]epending on the nature of the disability." Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989). Here, however, the contemporaneous medical evidence was specific and unequivocal. See Grebenick, 121 F.3d at 1201; Jakubowski v. Comm'r of Soc. Sec., 215 F. App'x 104, 108 (3d Cir. 2007). Hence, assuming arguendo that SSR 83-20 applies to the disability inquiry in Fischer's case -- a matter on which we take no view -- the ruling would not require the ALJ to call upon the services of a medical advisor to determine date of onset, and the district court erred when it concluded that the ALJ had to infer onset on the basis of ambiguous medical evidence.

## III.

As noted at the outset of this opinion, we see a need to call attention to the analytical problems confronting

- 13 -

decisionmakers who must interpret and apply SSR 83-20.  Although delineating the application of SSR 83-20 ultimately proved unnecessary to resolve this case, our attempt to clarify the law was frustrated by the Commissioner's failure to provide a full explanation of the DIB eligibility process and the inconsistent positions she has taken both in this case and across cases.  We describe below three instances in which the Commissioner's approach has generated confusion.

## A. The shifting relevance of SSR 83-20

The Commissioner argues that SSR 83-20 applies only to the question of "onset" -- the pinpoint inquiry into <u>when</u> a previously determined disability began -- and not to the threshold question of <u>whether</u> a claimant has a disability, either presently or prior to her DLI.  The Commissioner asserts that "onset" and "disability" are distinct inquiries even when the disability question focuses on the claimant's condition on a particular date in the past -- i.e., whether the claimant was disabled prior to her DLI.

Inconsistently, however, the Commissioner suggests that the ruling <u>does</u> apply to the disability-prior-to-DLI inquiry if the claimant is found to be presently disabled.[4]  The Commissioner

---

[4]  The Commissioner has not always taken this position. Previously, the agency insisted that SSR 83-20 does not apply even where a present disability has been found.  For example, in <u>May</u>, where the ALJ had found a present disability for SSI purposes, the

- 14 -

therefore argues that the onset determination and the disability-prior-to-DLI determination are distinct, except when they are not.

Inexplicably, the Commissioner has not identified a rationale for applying SSR 83-20 to the disability-prior-to-DLI inquiry only when an ALJ makes a present disability finding.[5] Thus, oddly, when an ALJ considers disability prior to DLI where there is a finding of present disability, the claimant receives the protection of the ruling; when confronting the same question where there is no finding as to present disability, the claimant does not have that protection. In sum, even though the DIB question is the same in both scenarios, the Commissioner does not explain why the ruling applies in one setting but not the other.

---

agency nevertheless argued that SSR 83-20 did not apply because May had not been found disabled prior to his DLI. See Brief for Defendant-Appellee at 8 n.4, 12-13, May, 1997 WL 616196; see also, e.g., Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998) (noting that, in a case where the ALJ had found a present disability, the Commissioner argued that "the ALJ did not err in refusing to call a medical expert because Armstrong did not fulfill his burden of proving that he was disabled prior to" his DLI).

[5] According to the Commissioner (in her brief to the district court), this scenario typically occurs in "a concurrent application case, where both SSI and DIB are sought." Def.'s Mem. in Supp. of Mot., at 12 & n.6. In such a case, "the ALJ has an obligation to make a finding of present disability" for SSI purposes and, if a present disability is found, the ALJ would apply SSR 83-20 in determining, for purposes of the DIB inquiry, whether the disability existed prior to the claimant's DLI. Def.'s Mem. in Supp. of Mot., at 12 & n.6.

## B. The role of present disability

We also struggle with the Commissioner's unsupported and undeveloped contention that a claimant's present disability status is irrelevant to a claimant's DIB application. The Commissioner asserted below, and reiterates on appeal, that an ALJ considering a DIB-only claim needs solely to determine disability status prior to DLI. See Def.'s Mem. in Supp. of Mot., at 11 n.4 (stating that the agency "has not adopted a rule requiring adjudicators to determine disability for the period after a claimant's date last insured where the claimant seeks DIB only"); see also Appellant's Br. at 17. Thus, when a claimant in Fischer's circumstances seeks only DIB, the Commissioner maintains that the applicability of SSR 83-20 to the question of disability prior to DLI depends on whether the ALJ chooses to perform a present disability inquiry that the Commissioner has told us is unnecessary.[6]

Taking at face value the Commissioner's assertion that an award of DIB does not depend on disability status after DLI, she appears to contemplate benefit payments to an individual who, though not disabled in recent years, is found to have been disabled within the meaning of the Social Security Act before her insurance status expired decades ago. This is the necessary implication of

---

[6] This choice appeared to concern the district court in Wilson because it left the ruling's application to the ALJ's whim. See 17 F. Supp. 3d at 142.

her contention that the only required inquiry in a DIB case is whether the claimant was disabled prior to her DLI. This position, without elaboration, is perplexing and may well be antithetical to the spirit of the Social Security Act. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1458-59 (9th Cir. 1995) ("The Social Security Act . . . [was] designed both to provide protection for individuals who can no longer work because of disability and to encourage individuals who have previously suffered from a disability to return to substantial gainful employment when their medical condition improves sufficiently to allow them to do so.").[7]

The Commissioner nowhere -- in her briefing to the district court or on appeal -- fully explains the analysis an ALJ must employ to determine whether a claimant may receive disability

---

[7] We note that a claimant may be entitled to insurance benefits, despite the termination of a disability, if the claimant applies for benefits within twelve months of the disability termination. See Soc. Sec. Admin., Program Operations Manual Sys., DI 10105.015, Retroactivity of Disability Application (Feb. 12, 2013); cf. Nguyen v. Chater, 172 F.3d 31, 35 n.2 (1st Cir. 1999) (per curiam) ("Irrespective of claimant's status on the hearing date, he qualified for benefits if he was disabled for any relevant, continuous twelve-month period."). The Commissioner did not raise or address this qualification and its effect on the ALJ's decisionmaking process in either her briefing or at argument.

Moreover, the Commissioner's broad contention that present disability is irrelevant to a DIB-only claim appears at odds with the rule, embraced across many circuits, that "an individual cannot receive disability benefits . . . unless the individual can establish that the current period of disability began on or prior to the expiration of insured status." Flaten, 44 F.3d at 1458, 1460-62 (listing cases).

insurance benefits.  She cites no current statute, regulation, or policy directive explaining the relationship between a present disability and an application for disability benefits based on long-ago expired insurance coverage.[8]  Because we need not do so on the facts of this case, we decline to speculate about how (or whether) the Commissioner's positions can be reconciled with each other and with the logic of the disability benefits system.  Unsurprisingly, there is no uniform approach in the courts on when to apply SSR 83-20.  Compare Eichstadt v. Astrue, 534 F.3d 663, 667 (7th Cir. 2008) ("The ALJ in this case found that Eichstadt was not disabled at any point before [her DLI].  With no finding of disability, there was no need to determine an onset date."), and Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997) (similar), with Grebenick, 121 F.3d at 1200-01 (applying SSR 83-20 to the

---

[8] In her brief to the district court, the Commissioner did quote language from the agency's litigation manual, which at one time stated that "it serves 'no purpose to make findings regarding the claimant's impairments or ability to work after the date last insured.'"  Def.'s Mem. in Supp. of Mot., at 11 n.4 (quoting Soc. Sec. Admin., Hearings, Appeals and Litig. Law Manual ("HALLEX") § I-5-4-40 (Implementation of the Difford Acquiescence Ruling) (Sept. 28, 2005)).  However, the agency removed the cited section from the manual on October 31, 2013, months before the Commissioner filed her brief.  See HALLEX § I-5-440 (Implementation of the Difford Acquiescence Ruling) (Oct. 13, 2013) ("We removed the [temporary instructions] titled 'Implementation of the Difford Acquiescence Ruling.'").

Moreover, the district court in Wilson rejected the reference to the manual section, finding that the quoted material was taken out of context.  See 17 F. Supp. 3d at 143 n.30 (quoting HALLEX § I-5-4-40).

disability-prior-to-DLI determination where the ALJ made no prior finding of disability, either at present or prior to DLI). Plainly, there is a need for clarification.

**C. The meaning of "should"**

To compound the confusion, the Commissioner has taken directly conflicting positions during this case on the meaning of a key provision within SSR 83-20. The ruling states that "the [ALJ] should call on the services of a medical advisor when onset must be inferred." SSR 83-20, 1983 WL 31249, at *3 (emphasis added). Before the district court, the Commissioner argued that "SSR 83-20 . . . does not explicitly require an ALJ to call a medical advisor, but states that one should be called," thus appealing to the non-mandatory nature of the word "should." Def.'s Mem. in Supp. of Mot., at 13 n.8. During oral argument on appeal, however, counsel for the Commissioner conceded that "should" is mandatory.[9] This concession is especially puzzling given that other circuits have held to the contrary -- i.e., that SSR 83-20's directive is not mandatory because the ruling states that the ALJ "should" seek the aid of a medical advisor rather than "must" or "shall." See, e.g., Eichstadt, 534 F.3d at 667.

---

[9] When asked if the Commissioner's position is that SSR 83-20's use of "should" should be read as "shall," counsel for the Commissioner replied in the affirmative, adding "we don't contest that."

In sum, the gaps and inconsistencies in the Commissioner's arguments as to the general applicability of SSR 83-20 pose a challenge to any decisionmaker attempting to determine when or how to apply the ruling. We urge the Commissioner to act swiftly to revise SSR 83-20 and enunciate a coherent explanation of the ruling's purpose and application, thereby providing much-needed clarity for claimants, the agency's own adjudicators, and the courts.

**IV.**

As explained above, assuming the applicability of SSR 83-20, we find error in the court's determination that Fischer's contemporaneous medical evidence was ambiguous and required the ALJ to call a medical advisor. We therefore vacate the judgment of the district court and remand for consideration of Fischer's remaining claims.[10]

So ordered.

---

[10] In her brief to the district court, Fischer argued, among other things, that the ALJ violated SSR 03-02p when he did not properly evaluate her Chronic Pain Syndrome diagnosis. The district court did not reach Fischer's asserted claims, and the parties have not argued them before us or asked us to resolve them. We therefore leave these matters to the district court to address in the first instance on remand.